(C. D. 1519)

JOHN P. HERBER & CO., INC. *v.* UNITED STATES

United States Customs Court, First Division

(Decided April 23, 1953)

*Lawrence, Tuttle & Harper* (*George R. Tuttle* and *Frank L. Lawrence* of counsel) for the plaintiff.

*Charles J. Wagner*, Acting Assistant Attorney General (*Daniel I. Auster* and *Chauncey E. Wilowski*, special attorneys), for the defendant.

Before OLIVER and MOLLISON, Judges

OLIVER, Chief Judge: This case relates to prismatic binoculars and plush-lined leather carrying cases with straps. The merchandise was assessed with duty at the rate of 30 per centum ad valorem under the provision in paragraph 228 (a), Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, for prism-binoculars, frames and mountings therefor, and parts thereof, finished or unfinished.

The deputy collector of customs at the port of entry, Seattle, who supervised the liquidation of the entry in question and the review of the protest now before us, testified that the classification of the binoculars, with the cases and straps, at a single rate under one tariff provision, was not based on the principle of entireties, but on the theory that the leather cases are the usual containers for the binoculars. The witness further stated that this official action was taken pursuant to instructions from the Bureau of Customs contained in T. D. 47664 (4), issued under date of May 2, 1935, and reading as follows:

(4) *Cases for microscopes, binoculars, and similar articles,* when specially adapted for use only as containers of the instruments contained therein and not suitable for any other use, should be treated as the usual and ordinary containers of the instruments, if in use as such at the time of importation, and assessed with duty at the ad valorem rate applicable to their contents. (T. D. 47330 noted. T. D. 23056, Abs. 29847 (T. D. 32842), and Abs. 25805 cited.) Bureau letter to collector of customs, New York, N. Y., March 19, 1935. (30–310.)

The "T. D. 47330" mentioned in the foregoing quotation is the decision in the case of *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.,* 22 C. C. P. A. (Customs) 281, T. D. 47330, wherein the merchandise, as described by the court, consisted of "certain leather cases, specially designed as containers for prism binoculars, and imported with and containing such binoculars." When that case was presented before this court, the issue was limited entirely to the question whether the binoculars and the cases should be classified as entireties, as assessed, or were dutiable as separate entities, as claimed. (*Hensel-Bruckmann & Lorbacher, Inc.* v. *United States,* 65 Treas. Dec. 103, T. D. 46850.) When the case went before the appellate court, the question was raised by appellant as to whether the leather cases should be considered as the usual or ordinary containers of the binoculars. In this connection, the court, in T. D. 47330, *supra,* through the late Judge Hatfield, said:

At the time of the oral arguments in this court, counsel for the Government suggested that the involved cases were the usual and ordinary containers for the imported binoculars, and that, by virtue of the provisions of section 402 (c), (d), and (f) of the Tariff Act of 1930, which define foreign and export values and cost of production, respectively, of imported merchandise, and each of which includes as a part of the definition of such values or costs "the cost of all containers and coverings of whatever nature", the cost of the involved cases should have been

added by the appraiser to the appraised value of the binoculars, and on the total value thus made up the collector should have assessed, and, in fact, did assess, the duty of 60 per centum ad valorem under paragraph 228 (a). In other words, as we understand it, it is now the suggestion of counsel for the Government that, although the doctrine of entireties does not apply, and was not, in fact, applied by the collector, the involved cases are not separately dutiable as held by the court below, but are dutiable as the usual and ordinary containers of the imported binoculars.

* * * That issue was not presented to the court below, was not raised in the assignment of errors, and apparently did not occur to counsel for the Government until the case was argued orally in this court. Accordingly, we do not consider it.

The foregoing outline is set forth as the background for the present case in which plaintiff claims that the leather carrying cases are not the "containers" for the binoculars within the meaning of that term, as it appears in the provisions of section 402 of the Tariff Act of 1930. Accordingly, it is claimed that these leather cases are dutiable at the rate of 20 per centum ad valorem under the provision in paragraph 1531, as modified by T. D. 51802, *supra*, for leather cases, not specially provided for.

The issue before us requires interpretation of the words, "all containers and coverings of whatever nature," as they are used in section 402, which defines the various statutory values that are the bases for appraisement of imported merchandise. Export value, section 402 (d), may be taken as illustrative for the purposes of our discussion. The definition thereof reads as follows:

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The United States appraiser at the port of entry testified that the present merchandise was entered and appraised as invoiced and that in his official appraisement he included within the unit value the cost of the wooden cases containing the imported binoculars and leather cases, and the cost of packing the merchandise in those wooden cases.

It appears from the order, invoices, and contract (defendant's exhibits 1–A to 1–E, inclusive), covering the importation under consideration, that the present merchandise was ordered as sets, consisting of binoculars and leather cases, the cases being described either as "plush-lined leather carrying case and carrying straps" or "plush-lined leather carrying case, including neck strap and carrying strap."

Donald C. Ide, employed since 1946 as assistant manager of the general merchandise department of the plaintiff corporation, identified

the merchandise in question as two different types of binoculars, "one is 7 x 50 Zeus, and the other is a 6 x 30 Luminas," which were imported in leather cases of appropriate size and shape for each kind or class of binoculars. The leather cases were fitted or equipped with holding straps.

Referring to the usual practice of his employer, the witness stated that orders for binoculars always specify that appropriate cases therefor should be supplied. Leather cases may vary with respect to the kind of lining, either plush or cloth, and also as to the type and weight of leather, and the quality or grade of stitching. All of the leather cases included in the shipments under consideration were plush lined. While leather cases may vary according to the materials used, any case for a particular size of binoculars may be used interchangeably. In other words, a case made for binoculars of "standard specification 6 x 30" would fit instruments of those specifications, regardless of the type or quality of construction of the case.

Bert Friedberg, an importer whose business included the importation of "many thousand" binoculars from Japan, France, and Germany, also appeared on behalf of plaintiff. He stated that "maybe 75 per cent" of the binoculars he imported were without cases, and that in such instances American-made cases were used. Cross-examination of the witness showed that in his purchases of binoculars with cases, the case was made to fit the particular size of binoculars; that upon importation the binoculars were inside the cases; and that "in all our invoices on Japanese goods the value of the case is specified separately on the invoices."

Counsel for plaintiff, in their brief, have referred to several cases, arising under earlier tariff acts (acts of 1909, 1913, and 1922), relating to the provision for unusual containers or covers, which provision is embodied in section 504 of the Tariff Act of 1930. *United States* v. *Hohner et al.*, 4 Ct. Cust. Appls. 122, T. D. 33393; *Meyer & Lange* v. *United States*, 12 Ct. Cust. Appls. 15, T. D. 39892; *Gibson, Thomsen & Co.* v. *United States*, 58 Treas. Dec. 519, T. D. 44357; *W. X. Huber Co.* v. *United States*, 3 Cust. Ct. 316, C. D. 267. In view of the deputy collector's testimony, showing that the classification herein followed instructions from the Bureau of Customs based upon the provisions of section 402, whose provisions are distinguishable from those of section 504, which were involved in the cited cases, we find that those cases have no influence on the disposition of the present issue.

Judicial interpretation of the provision for "usual containers" was given expression as early as May 10, 1911, in the case of *United States* v. *Garramone*, 2 Ct. Cust. Appls. 30, T. D. 31577, which arose under the Tariff Act of 1909. Although the language of subsection 18 of section 28 of that act was not identical with the provisions of section

402 of the Tariff Act of 1930, the substance of both can be considered as being the same for the purposes of the present issue as it relates to the language, "all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States," section 402 (d), *supra*.

In the *Garramone* case, the merchandise consisted of fresh tomatoes and tomato sauce imported in "ordinary tin cans, commonly used in the transporting, holding, and preserving, until consumed, of similar and like merchandise." The collector regarded the cans or tins as the containers or coverings of the tomatoes or tomato sauce and, therefore, included the value thereof in the dutiable value of their contents. The importer claimed that the cans or tins should have been separately classified under a provision for cylindrical or tubular tanks or vessels. The court found that the cans or tins were "the ordinary containers used for holding the merchandise transported therein. They are neither designed nor adapted to any other use nor of any value apart from their contents, * * *." Along the same line, the court said:

> Separated from their contents these containers are of no use, of no value, and do not constitute any part of the consideration which induces the purchase thereof by the consumers, and, ordinarily, they pass from the hands of the importers to the consumers, whose sole purpose and object is to obtain the contents and not the containers.

In sustaining the collector's action, the court reasoned as follows:

> It was evidently the intention of Congress to treat the value of the ordinary containers, at least of goods dutiable at ad valorem rates unless such containers were elsewhere so specifically provided for as to indicate a contrary intention, in the same manner as it treated the costs, charges, and expenses incident to placing the merchandise in condition, packed and ready for shipment, namely, as being included in the market value of the goods themselves in the principal markets of the country from whence imported. It is obvious that they are bought and sold in this manner, and that all these charges, including the cost of the container, entered into their purchase price, and, therefore, for purposes of assessing duty, it is the logical and consistent way and manner to treat them.

The Court of Customs and Patent Appeals has adhered to its statutory construction enunciated in the *Garramone* case, *supra*, and consistently recognized that "containers," as the term is used in section 402 (d), contemplate articles that are the ordinary, usual, and necessary containers for the merchandise contained therein, that have no use or purpose otherwise than in the *bona fide* transportation of their contents to the United States, and that, upon removal of their contents, are either destroyed or have no further use as such containers. *Balfour, Guthrie & Co., Ltd.* v. *United States*, 27 C. C. P. A. (Customs) 17, C. A. D. 55; *United States* v. *C. J. Tower & Sons*, 36 C. C. P. A. (Customs) 106, C. A. D. 406.

Under the interpretation set forth in the *Garramone* case, *supra*, the "containers," in the sense that the term is used within the provisions of section 402 of the Tariff Act of 1930, are the wooden cases that transported the leather cases containing the binoculars into the United States. Those wooden cases are of no use, of no value, and do not constitute any part of the consideration which induces the purchase of the binoculars and the leather cases.

The foregoing reference to the wooden cases emphasizes the distinction between them and the leather cases under consideration. The use of these leather cases, as containers for the binoculars, is continuous, extending directly to the ultimate consumer. To the purchaser in this country, the leather case is a consideration equally important as the binoculars. The straps, fitted to the leather cases, impart to the articles evidence that they are dedicated to a definite use beyond mere containers. It is a matter of which we can take judicial notice that the tourist, who carries binoculars, usually has them in some sort of a leather case equipped with straps convenient for carrying. In such capacity, the leather cases serve not only as the containers for carrying but also as a protective medium to prevent damage or breakage. The leather cases under consideration are not "containers" of merchandise, as that term is contemplated by the provisions of section 402, *supra*.

For all of the reasons hereinabove set forth, we hold to be erroneous the action of the collector insofar as the leather cases in question were regarded as the "usual containers of the binoculars." That conclusion results in a finding of error in the appraiser's action, whose official appraisement was made on the two classes of merchandise as though they were one. Under the circumstances developed herein, the appraisement is invalid and void.

The condition now before us is the same as that which existed in the case of *Pitman Publishing Corporation* v. *United States*, 28 Cust. Ct. 164, C. D. 1404, where the court held that sets of ledger paper were separately classifiable from so-called "Folder Stock" that served as front and back covers for the ledger paper. The court disposed of the cited case as follows:

It follows, therefore, that the liquidations of the instant entries, based as they were upon void appraisements, are likewise void, *United States* v. *William Heyer*, 31 C. C. P. A. (Customs) 111, C. A. D. 259, and the protests filed against such void liquidations are premature. Accordingly, they must be dismissed.

Under the provisions of section 501 of the Tariff Act of 1930, as amended by section 16 (b) of the Customs Administrative Act of 1938 (19 U. S. C. section 1501), now 28 U. S. C. section 2636 (d), we are required to remand these matters to a single judge for the determination of the proper dutiable values of the merchandise in question.

See also *Hughes Fawcett, Inc.* v. *United States*, 29 Cust. Ct. 1, C. D. 1434.

The procedure invoked in the *Pitman Publishing Corporation* case, *supra,* is to be followed in the present case. Accordingly, we dismiss the protest before us as premature and remand the matter for further proceedings to a single judge sitting in reappraisement for determination of the value of the imported merchandise in the manner provided by law.

Judgment will be rendered accordingly.